OBERLIES v SEARCHMONT RESORT, INC

Docket No. 220485. Submitted December 5, 2000, at Lansing. Decided June 15, 2001, at 9:10 A.M.

Jennifer Oberlies brought an action in the Bay Circuit Court against Searchmont Resort, Inc., seeking damages for injuries sustained while visiting the defendant's ski facility, located north of Sault Ste. Marie, Ontario, Canada. The court, Lawrence M. Bielawski, J., granted summary disposition in favor of the defendant on the basis that the court lacked personal jurisdiction over the defendant. The plaintiff appealed, alleging that the court had jurisdiction over the defendant because the defendant directed its marketing and advertising efforts toward Michigan residents like the plaintiff.

The Court of Appeals *held*:

1. The defendant's contacts with Michigan are not of such nature and quality as to make it subject to the exercise of general personal jurisdiction under MCL 600.711.

2. The only relevant part of the long-arm statute pertaining to limited personal jurisdiction over corporations that could apply to the circumstances of this case is MCL 600.715(1), the corporation's transaction of any business within the state.

3. A nonresident corporation's advertising in Michigan by itself can constitute the transaction of any business under MCL 600.715(1) where there is both evidence of a clear intent by the corporation to further the ends of its business by particularly targeting Michigan residents for profit and evidence that the corporation's advertising led directly to establishing business relationships with Michigan residents.

4. The defendant's advertising constituted the transaction of business in Michigan under MCL 600.715(1). However, the court properly granted summary disposition in favor of the defendant because in this action the exercise of personal jurisdiction over the defendant does not comport with principles of due process. Although the defendant purposefully availed itself of the privilege of exploiting Michigan business opportunities, the connection between the plaintiff's cause of action and the defendant's Michigan advertising is so attenuated that it is unreasonable to exercise jurisdiction over the defendant on that basis. The advertising activities did not cause the

plaintiff's alleged injuries. The cause of action did not arise from the defendant's activities in Michigan.

Affirmed.

1. COURTS — CORPORATIONS — JURISDICTION — WORDS AND PHRASES — TRANS-ACTION OF ANY BUSINESS.

A nonresident corporation's advertising in Michigan by itself can constitute the "transaction of any business" for purposes of the long-arm statute pertaining to limited personal jurisdiction over corporations where there is both evidence of a clear intent by the corporation to further the ends of its business by particularly targeting Michigan residents for profit and evidence that the corporation's advertising led directly to establishing business relationships with Michigan residents (MCL 600.715[1]).

2. COURTS — JURISDICTION — DUE PROCESS.

Due process requires that the exercise of personal jurisdiction over a defendant comport with traditional notions of fair play and substantial justice; a three-part test is employed to determine whether a defendant has minimum contacts with Michigan to the extent that limited personal jurisdiction may be exercised in accordance with due process: the defendant must have purposefully availed itself of the privilege of conducting activities in Michigan, thus invoking the benefits and protections of the state's laws; the cause of action must arise from the defendant's activities in the state; and the defendant's activities must be substantially connected with Michigan to make the exercise of jurisdiction over the defendant reasonable.

3. COURTS — CORPORATIONS — JURISDICTION.

A foreign defendant whose contacts with Michigan are limited solely to advertising aimed at Michigan residents can be compelled to defend an action brought in Michigan only if the defendant's instate advertising activities, in a natural and continuous sequence, caused the alleged injuries that form the basis of the plaintiff's cause of action.

*Beier Howlett, P.C.* (by *Richard A. Joslin, Jr.*), for the plaintiff.

*Thomas, DeGrood, Witenoff & Hoffman* (by *Gary N. Felty, Jr.,* and *John J. Hoffman*) (*Michelle A. Thomas,* of Counsel), for the defendant.

Before: O'CONNELL, P.J., and ZAHRA and B. B. MACKENZIE*, JJ.

ZAHRA, J. Plaintiff appeals as of right from the trial court's order granting summary disposition for defendant pursuant to MCR 2.116(C)(1) (lack of personal jurisdiction). We affirm.

## I. FACTS

Plaintiff visited defendant's ski facility, located north of Sault Ste. Marie, Ontario, Canada, after seeing an advertisement for the facility in a Michigan newspaper. On February 9, 1997, plaintiff was allegedly injured when she was thrown to the ground as a result of being negligently loaded onto a ski lift operated by defendant's employees. The trial court granted summary disposition for defendant on the basis that the court lacked personal jurisdiction over defendant.

## II. LEGAL ANALYSIS

On appeal, plaintiff argues that the trial court has jurisdiction over defendant because defendant directed its marketing and advertising efforts toward Michigan residents. We review a trial court's decision on a motion for summary disposition de novo. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). Likewise, whether a court has personal jurisdiction over a party is a question of law that is reviewed de novo on appeal. *Poindexter v Poindexter*, 234 Mich App 316, 319; 594 NW2d 76

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

(1999). A plaintiff bears the burden of establishing jurisdiction over a defendant; however, the plaintiff need only make a prima facie showing of jurisdiction to defeat a motion for summary disposition. *Jeffrey v Rapid American Corp*, 448 Mich 178, 184; 529 NW2d 644 (1995). In reviewing a motion for summary disposition brought under MCR 2.116(C)(1), we consider the documentary evidence submitted by the parties in a light most favorable to the nonmoving party. *Jeffrey, supra; Mozdy v Lopez*, 197 Mich App 356, 359-360; 494 NW2d 866 (1992).

Before a court may obligate a party to comply with its orders, the court must have in personam jurisdiction over the party. Jurisdiction over the person may be established by way of general personal jurisdiction or specific (limited) personal jurisdiction. See *Jeffrey, supra*, and *Kircos v Goodyear Tire & Rubber Co*, 70 Mich App 612, 613-614; 247 NW2d 316 (1976). The exercise of general jurisdiction is possible when a defendant's contacts with the forum state are of such nature and quality as to enable a court to adjudicate an action against the defendant, even when the claim at issue does not arise out of the contacts with the forum. *Helicopteros Nacionales de Colombia, SA v Hall*, 466 US 408, 414, n 9, 415-416; 104 S Ct 1868; 80 L Ed 2d 404 (1984). When a defendant's contacts with the forum state are insufficient to confer general jurisdiction, jurisdiction may be based on the defendant's specific acts or contacts with the forum. *Witbeck v Bill Cody's Ranch Inn*, 428 Mich 659, 665; 411 NW2d 439 (1987). Our Legislature has provided long-arm statutes to allow courts to take jurisdiction over nonresident corporations under theories of general and specific jurisdiction. MCL 600.711, 600.715. When

analyzing whether it is proper to exercise personal jurisdiction over a defendant, we must determine whether the defendant's conduct falls within a provision of a Michigan long-arm statute and whether the exercise of jurisdiction comports with due process. *Green v Wilson*, 455 Mich 342, 351; 565 NW2d 813 (1997); *Aaronson v Lindsay & Hauer Int'l Ltd*, 235 Mich App 259, 262; 597 NW2d 227 (1999). Long-arm statutes delineate the nature, character, and types of contacts that must exist to exercise personal jurisdiction. *Green, supra* at 348. Due process restricts permissible long-arm jurisdiction by defining the quality of contacts necessary to justify the exercise of personal jurisdiction over a defendant. *Id.*

In the present case, defendant was not incorporated under the laws of Michigan, has not consented to jurisdiction in Michigan, and has not carried on a continuous and systematic part of its general business in this state. Defendant operates a ski facility in Canada and does not have any officer, employee, bank account, or place of business in Michigan. Therefore, defendant is not subject to the exercise of general personal jurisdiction, MCL 600.711, and we focus our attention on whether the circuit court has specific personal jurisdiction over defendant.

A. SPECIFIC PERSONAL JURISDICTION UNDER MCL 600.715

Michigan's long-arm statute pertaining to limited personal jurisdiction over corporations provides:

The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to

render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of any real or tangible personal property situated within the state.

(4) Contracting to insure any person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant. [MCL 600.715.]

Only subsection 1 can be said to apply to the circumstances of the present case. It is undisputed that defendant engaged in advertising in Michigan. There is no evidence that defendant had any other contact with the state of Michigan. Therefore, we must determine whether defendant's advertising constituted the "transaction of any business" under MCL 600.715(1).

Well-settled principles of statutory interpretation require us to look to the plain language of MCL 600.715(1) to determine whether defendant falls within the state's long-arm jurisdiction. See *Elia v Hazen*, 242 Mich App 374, 381; 619 NW2d 1 (2000), and *Walter v M Walter & Co, Inc*, 179 Mich App 409, 412; 446 NW2d 507 (1989). The primary goal of judicial interpretation of statutes is to ascertain and give effect to the Legislature's intent. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998). We may not speculate regarding the probable intent of the Legislature beyond the words expressed in the statute. *In re Schnell*, 214 Mich App 304, 310; 543 NW2d 11 (1995). When reasonable minds may differ with regard to the meaning of a stat-

ute, the courts must look to the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the purpose of the statute. *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 644; 513 NW2d 799 (1994).

The phrase "transaction of any business" is not defined in the statute. Therefore, it is proper to rely on dictionary definitions in determining the meaning of that provision. *Popma v Auto Club Ins Ass'n*, 446 Mich 460, 470; 521 NW2d 831 (1994). "Transact" is defined as "to carry on or conduct (business, negotiations, etc.) to a conclusion or settlement." *Random House Webster's College Dictionary* (1997). "Business" is defined as "an occupation, profession, or trade . . . the purchase and sale of goods in an attempt to make a profit." *Id*. Our Legislature's use of the word "any" to define the amount of business that must be transacted establishes that even the slightest transaction is sufficient to bring a corporation within Michigan's long-arm jurisdiction. See *Sifers v Horen*, 385 Mich 195, 199, n 2; 188 NW2d 623 (1971) (stating that MCL 600.715(1) refers to "each" and "every" business transaction and contemplates even "the slightest" act of business in Michigan), and *Viches v MLT, Inc*, 127 F Supp 2d 828, 830 (ED Mich, 2000) (Judge Paul Gadola stating: "The standard for deciding whether a party has transacted any business under § 600.715[1] is extraordinarily easy to meet. 'The only real limitation placed on this [long arm] statute is the due process clause.'" [citation omitted]).

In the present case, defendant engaged in widespread advertising that had a clear purpose of soliciting business from Michigan residents. Defendant

advertised through Michigan newspapers, a ski guide distributed with Michigan telephone books, telephone books distributed in Sault Ste. Marie, Michigan, and brochures distributed in Michigan. Several of those print ads highlighted the proximity of defendant's ski facility to Michigan, provided detailed directions to the facility from Michigan, and highlighted the apparent benefits of skiing in Ontario as opposed to Michigan. Plaintiff claims to have learned about defendant's ski facility from an ad in a Michigan newspaper.

We conclude that a nonresident corporation's advertising by itself can constitute the "transaction of any business" under MCL 600.715(1) where there is both evidence of a clear intent by the corporation to further the ends of its business by particularly targeting Michigan residents for profit and evidence that the corporation's advertising led directly to establishing business relationships with Michigan residents. *Lanier v American Bd of Endodontics*, 843 F2d 901, 907 (CA 6, 1988) (stating that "[n]either the presence of the defendant in the state, nor actual contract formation need take place in the forum state for defendant to do business in that state"); *American Business Overseas v Methods Research Products, Inc*, 593 F Supp 1, 4 (WD Mich, 1983) (relying on the "quality of contacts which follow from [a nonresident corporation's] advertisement" in deciding whether the defendant's advertisement was sufficient to confer personal jurisdiction); see *Woodward v Keenan*, 79 Mich App 543, 549; 261 NW2d 80 (1977), and *Kiefer v May*, 46 Mich App 566, 571; 208 NW2d 539 (1973); see also *Clark v St Augustine, Florida*, 977 F Supp 541, 543 (D Mass, 1997), *Dirks v Carnival Cruise Lines*, 642 F Supp 971, 974 (D Kan, 1986), *Cronin v Sierra*

*Medical Center*, 129 NM 521, 525-526; 10 P3d 845 (NM App, 2000), *McGovern v East Hampstead Supermarket*, 10 Mass L Rptr 513; 1999 WL 818046 (Mass Super, 1999), and *Martinez v Farmington Motors, Inc*, 931 P2d 546, 548 (Colo App, 1996); but see *Dal Ponte v Northern Manitoba Native Lodges, Inc*, 220 Ill App 3d 878, 885; 581 NE2d 329 (1991), and *Carbone v Fort Erie Jockey Club, Ltd*, 47 AD2d 337, 338-339; 366 NYS2d 485 (1975). The advertisements that defendant disseminated in Michigan, which among other things referenced the proximity of defendant's facility to Michigan and provided specific directions from Michigan, evidence a clear intent by defendant to cultivate a market in Michigan. Plaintiff claims that defendant's advertisement led her to establish a business relationship with defendant. Under these circumstances, defendant's advertising constituted the transaction of business in Michigan,[1] which falls within Michigan's long-arm jurisdiction. MCL 600.715(1).

### B. DUE PROCESS

Despite our conclusion that defendant's conduct fell within Michigan's long-arm statute, the trial court properly granted summary disposition because the exercise of personal jurisdiction over defendant does not comport with principles of due process. The Due Process Clause requires that the exercise of personal

---

[1] Given our conclusion that defendant's print ads led to the transaction of business in Michigan, we need not consider the merit of plaintiff's claim th'at defendant also advertised to Michigan residents through an Internet web site. See *Ford Motor Co v Great Domains, Inc*, 141 F Supp 2d 763 (ED Mich, 2001), *Neogen Corp v Neo Gen Screening*, Inc, 109 F Supp 2d 724, 728 (WD Mich, 2000), and *Winfield Collection, Ltd v McCauley*, 105 F Supp 2d 746, 750 (ED Mich, 2000).

jurisdiction comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co v Washington*, 326 US 310, 316; 66 S Ct 154; 90 L Ed 95 (1945); see *Starbrite Distributing, Inc v Excelda Mfg Co*, 454 Mich 302, 308; 562 NW2d 640 (1997).

The "constitutional touchstone" of a due process analysis with respect to personal jurisdiction is whether the defendant purposely established the minimum contacts with the forum state necessary to make the exercise of jurisdiction over the defendant fair and reasonable. *Witbeck, supra* at 666, citing *Burger King Corp v Rudzewicz*, 471 US 462, 474; 105 S Ct 2174; 85 L Ed 2d 528 (1985). Courts employ a three-part test to determine whether a defendant has "minimum contacts" with Michigan to the extent that limited personal jurisdiction may be exercised in accordance with due process.

> "First, the defendant must have purposefully availed himself of the privilege of conducting activities in Michigan, thus invoking the benefits and protections of this state's laws. Second, the cause of action must arise from the defendant's activities in the state. Third, the defendant's activities must be substantially connected with Michigan to make the exercise of jurisdiction over the defendant reasonable." [*Jeffrey, supra* at 186, quoting *Mozdy, supra* at 359.]

See *Ford, supra.* Whether jurisdiction is proper under the minimum contacts test does not depend on the weight of the factors individually. Rather, the primary focus when analyzing personal jurisdiction should be on " 'reasonableness' and 'fairness.' " *Jeffrey, supra* at 186. Whether the relationship between the defendant, the forum, and the litigation allows personal jurisdic-

tion over a defendant must be analyzed by the courts case by case. *Id.* at 187.

We first consider whether defendant purposefully availed itself of the privilege of exploiting Michigan business opportunities. *Starbrite, supra* at 309.

> " '[P]urposeful availment' is something akin either to a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct which can be properly regarded as a prime generating cause of the effects resulting in Michigan, something more than a passive availment of Michigan opportunities. The defendant will have reason to foresee being 'haled before' a Michigan court." [*Id.* at 309-310, quoting *Jeffrey, supra* at 187-188, quoting *Khalaf v Bankers & Shippers Ins Co*, 404 Mich 134, 153-154; 273 NW2d 811 (1978).]

Contacts with a forum state that are merely "random," "fortuitous," or "attenuated" may not be the basis for haling a defendant into a foreign jurisdiction. *Burger King, supra* at 475. As already discussed, the evidence suggests that defendant engaged in widespread advertising in Michigan that particularly targeted Michigan residents. Given defendant's purposeful and successful solicitation of business from Michigan residents, defendant could anticipate being haled into Michigan courts. See *Jeffrey, supra* at 187 (stating that the mere fact that a corporate defendant was not physically present in Michigan would not defeat the exercise of personal jurisdiction where the defendant "reaches beyond its own state and purposely avails itself of the privilege of exploiting forum-based business opportunities"), and *American Business, supra.* Cf. *Witbeck, supra* at 672-673 (holding that the defendant's advertisement in a AAA national publication did not amount to substantial

connection with Michigan to the extent that Michigan courts could exercise personal jurisdiction over the defendant), and *Mozdy, supra* (holding that the defendant's single advertisement in a Detroit newspaper was insufficient proof of purposeful availment in Michigan).

Notwithstanding defendant's purposeful availment of Michigan business opportunities through its advertising, we are compelled to find that the presence of other factors render the exercise of jurisdiction unreasonable. *Jeffrey, supra* at 189. Simply put, the connection between plaintiff's cause of action and defendant's Michigan advertising is so attenuated that it is unreasonable to exercise jurisdiction over defendant in this case. It is fundamental that "[f]or limited personal jurisdiction to attach, the cause of action must arise from the circumstances creating the jurisdictional relationship between the defendant and the foreign state." *Rainsberger v McFadden*, 174 Mich App 660, 662; 436 NW2d 412 (1989); see MCL 600.715. The specific standard to be utilized in determining whether a cause of action arises from a defendant's advertising activities in Michigan has not been squarely addressed by Michigan courts. See *Mozdy, supra* at 360, *Woodward, supra,* and *Kiefer, supra.*

Cases from other jurisdictions employ various methods of analyzing whether a cause of action may be said to arise from a defendant's activities. Some cases have required very little connection between the cause of action and the defendant's activities in the forum state. *Lanier, supra* at 909 (recognizing that federal circuit courts have applied tests that examine whether a plaintiff's cause of action was "made possible" by the defendant's transaction of bus-

iness with the plaintiff and whether a plaintiff's cause of action "lies in the wake of" the relevant business transaction); *Cronin, supra* at 526 (relying on cases utilizing "if not for" and "within the wake of" standards); *Tatro v Manor Care, Inc*, 416 Mass 763, 769-773; 625 NE2d 549 (1994) (construing a Massachusetts statute as requiring "but for" causation). Other cases have required allegations and proof that a defendant's activities in the forum state were the proximate cause or something substantially similar to the proximate cause of the alleged injuries that occurred in a foreign jurisdiction. *Rosich v Circus & Circus Enterprises, Inc*, 3 F Supp 2d 148, 150 (D PR, 1998) (relying on *Pizarro v Hoteles Concorde Int'l*, 907 F2d 1256, 1260 [CA 1, 1990], which required a showing of legal proximate cause, and holding that jurisdiction was not proper because the plaintiffs failed to allege any connection between their injury and the defendant's advertising); *Gaylord v Sheraton Ocean City Resort & Conference Center*, 1993 WL 120299 (ED Pa, 1993) (requiring "more than simple 'but for' causation," and instead "something akin to legal or proximate cause"); *Russo v Sea World of Florida, Inc*, 709 F Supp 39, 42 (D RI, 1989) (holding that whether a cause of action arises out of a defendant's contact with the forum state is "analogous to the issue of proximate cause in tort law"); *Kervin v Red River Ski Area, Inc*, 711 F Supp 1383, 1389-1390 (ED Tex, 1989) (relying on case law that requires "virtually a direct link" between a plaintiff's claim and a defendant's contacts with the forum state); *Wisselman v Mount Snow, Ltd*, 524 F Supp 78, 80 (ED NY, 1981) (relying on case law that requires a "direct relation" between the wrong sued upon and the busi-

ness transacted in the forum state); see *Patton v Windsor Raceway, Inc*, 635 F Supp 327 (ED Mich, 1986) (Judge George LaPlata holding that it was offensive to concepts of due process and reasonableness to find jurisdiction where the plaintiff's injuries sustained during a slip and fall incident at the defendant's racetrack in Windsor, Ontario, Canada, were not caused by the defendant's advertising in Michigan), and *Dunham v Hunt Midwest Entertainment, Inc*, 2 Neb App 969; 520 NW2d 216 (1994) (finding no basis for jurisdiction, in part, because the plaintiff's injuries were not, in a natural and continuous sequence, caused by the defendant's advertising).

We conclude that in order for a foreign defendant to be compelled to defend a suit brought in Michigan where the defendant's contacts with Michigan are limited solely to advertising aimed at Michigan residents, the defendant's instate advertising activities must, in a natural and continuous sequence, have caused the alleged injuries forming the basis of the plaintiff's cause of action. To hold otherwise under such circumstances would be contrary to traditional notions of fair play and substantial justice. *Int'l Shoe, supra; Starbrite, supra.*

A foreign corporation that advertises in Michigan can reasonably expect to be called to defend suits in Michigan charging unlawful advertising or alleging that the advertising, itself, directly injured a Michigan resident. Michigan courts would have a significant interest in adjudicating suits where Michigan residents were directly injured by advertising aimed at Michigan residents. See *Burger King, supra* at 476-477. The same is not true, however, when a cause of action filed in Michigan is merely tangentially related

to a corporation's instate advertising. The fact that a corporation actively advertises to Michigan residents does not mean that it submits to the burden of defending any and all causes of action brought in Michigan that may result from Michigan customers visiting its out-of-state facilities. Moreover, Michigan courts do not have significant interests in adjudicating every case involving Michigan residents. See *id.*

The circumstances of the present case demonstrate the inequity in allowing courts to exercise jurisdiction over a party solely on the basis of the party's advertising activities in the forum state. Here, plaintiff alleges that she was "induced" to visit defendant's facility by an advertisement defendant disseminated in Michigan. Accepting that assertion as true, it may be said that plaintiff would not have sustained injury but for defendant's advertising in Michigan, because plaintiff would not have visited defendant's facility if not for defendant's advertising. However, plaintiff's injuries are alleged to result from conduct that occurred solely in Canada. Plaintiff's complaint alleges that defendant, through its agents, negligently operated the ski lift from which plaintiff fell and was negligent in the manner in which it responded to the accident. Plaintiff does not claim injury directly resulting from defendant's advertisements in Michigan. See *Patton, supra* at 329 (holding that the defendant had insufficient minimum contacts with Michigan despite the facts that the defendant was alleged to have expended eighty-five percent of its advertising budget on advertising in Michigan and sixty-five percent of the patrons at the defendant's Windsor racetrack were allegedly Michigan residents). Moreover, defendant's duty to plaintiff that will be at issue in plain-

tiff's personal injury action does not originate from defendant's activities in Michigan. See *Dirks, supra* at 975, and *Wisselman, supra* at 80, citing *Gelfand v Tanner Motor Tours, Ltd*, 339 F2d 317, 321-322 (CA 2, 1964). Instead, the alleged negligence, the subsequent injury and every relevant occurrence connecting those events, occurred in Canada. See *Patton, supra, Hughes v Cabanas del Caribe Hotel*, 744 F Supp 788, 797 (ED Mich, 1990), *Kervin, supra,* and *Wisselman, supra.* Defendant's agents and the relevant witnesses to the events would be required to travel to Michigan to testify regarding matters that are alleged to have occurred entirely outside Michigan. This is especially burdensome where, as here, plaintiff by her own volition chose to travel to Canada to patronize defendant's facility, which had no connection to Michigan except through advertisements. See *Patton, supra.*

Given that defendant's sole contact with Michigan was through advertisements, exercising jurisdiction in this case would be unreasonable. Traditional notions of fair play and substantial justice would be offended if we compelled this foreign defendant to defend a negligence action in Michigan that arises solely from alleged tortious conduct by its employees at its Ontario facility when defendant's only contacts with Michigan consisted of advertising. *Int'l Shoe, supra; Starbrite, supra.*

### III. CONCLUSION

Defendant's conduct fell within Michigan's long-arm jurisdiction. However, exercising personal jurisdiction over defendant does not comport with due process because it is unreasonable to require defendant to defend an action in Michigan that is based solely on

an alleged personal injury occurring in Ontario, Canada, when defendant's only contact with Michigan consists of advertising. Accordingly, the trial court properly granted summary disposition for defendant on the basis that the court lacks personal jurisdiction over defendant.[2]

Affirmed.

---

[2] We further reject plaintiff's argument that summary disposition was improper without further discovery regarding defendant's contacts with the state of Michigan. Plaintiff's complaint only alleged negligence. Because our decision is based in large part on the fact that plaintiff's negligence claim cannot be said to have risen from defendant's advertising activities in this state, further discovery regarding defendant's contacts with Michigan does not stand a reasonable chance of uncovering factual support for plaintiff's position and summary disposition was not prematurely granted. *Village of Dimondale v Grable*, 240 Mich App 553, 566; 618 NW2d 23 (2000). Moreover, while Michigan courts have adopted a strong policy favoring full and open discovery, this policy has limited application where there is a preliminary motion challenging jurisdiction. The exercise of jurisdiction over a nonresident party relates to whether it is fair to hale that party into a Michigan court. *Jeffrey, supra* at 186. The concept of fairness is emasculated where the nonresident is haled to Michigan during the completion of discovery to find out whether the party should be haled to Michigan to defend the suit. In these circumstances, whether it is fair to require further discovery before deciding a preliminary motion regarding jurisdiction rests in the discretion of the trial court. On the basis of our review of the record, we cannot find that the trial court abused its discretion in this case.