*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

AKF, INC, d/b/a FUNDKITE,

        Plaintiff-Appellee,

v

RESTORATION SERVICES HOLDING, LLC,
3691 CASS ROAD, LLC, RS REAL ESTATE
HOLDING, LLC, 4463 SOUTH DORT HIGHWAY,
LLC, and DONALD R. FELLOWS III,

        Defendants,

and

1150 7TH STREET, LLC,

        Defendant-Appellant,

UNPUBLISHED
August 12, 2021

No. 352216
Kent Circuit Court
LC No. 19-001110-CZ

---

Before: TUKEL, P.J., and K. F. KELLY and GADOLA, JJ.

PER CURIAM.

Defendant 1150 7th Street, LLC (1150), appeals by leave granted[1] the trial court's order denying its motion to set aside the foreign judgment. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On November 8, 2018, AKF, Inc. (hereinafter, Fundkite), filed a judgment by confession (the Judgment) in the Queens County, New York Supreme Court that memorialized an agreement between Fundkite, defendant Donald R. Fellows III, 1150, defendant Restoration Services

---

[1] *AKF, Inc v Restoration Servs Holding, LLC*, unpublished order of the Court of Appeals, entered March 31, 2020 (Docket No. 352216).

Holding, LLC (Restoration Services), and three other corporate defendants, which are not parties to this appeal.[2]  As part of the Judgment, Fellows averred that he was the owner and principal of all five corporate defendants, including 1150.  Fellows averred that he, on behalf of all defendants, guaranteed the payment of Restoration Services's obligations to Fundkite.  The Queens County Clerk certified the Judgment.  Eventually, Fundkite filed an Affidavit and Notice of Entry of Foreign Judgment in the Kent Circuit Court, which that court entered.  Over the following months, Fundkite attempted to collect on the Judgment.  Then, 1150 moved under MCR 2.612(C)(1)(d) (judgment is void) to set aside the Judgment, arguing that the New York court lacked personal jurisdiction over it.  In support of its motion, 1150 argued that it was member-managed and that Fellows was not a manager.  Furthermore, it was alleged that Fellows sold his interest in 1150 before he consented to the Judgment.  Therefore, according to 1150, Fellows lacked authority to bind 1150 to the Judgment and the jurisdiction of the New York court.  1150 also maintained that, after Fellows sold his interest in it, 1150 mistakenly left Fellows as its registered agent with the Bureau of Licensing and Regulatory Affairs (LARA) in Michigan.  The trial court denied the motion, and 1150 now appeals.

## II.  ANALYSIS

On appeal, 1150 submits that the trial court erred in failing to set aside the judgment for lack of personal jurisdiction over it, or alternatively failed to conduct an evidentiary hearing.  We disagree.

This Court reviews for an abuse of discretion a trial court's decision on a motion to set aside a judgment.  *Vestevich v West Bloomfield Twp*, 245 Mich App 759, 763; 630 NW2d 646 (2001); see also *C D Barnes Assoc, Inc v Star Heaven, LLC*, 300 Mich App 389, 421-422; 834 NW2d 878 (2013).  A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes.  *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 604; 886 NW2d 135 (2016).  This Court reviews de novo whether a trial court has personal jurisdiction over a party.  *Lease Acceptance Corp v Adams*, 272 Mich App 209, 218; 724 NW2d 724 (2006).

Article IV, § 1, the "Full Faith and Credit Clause," of the United States Constitution provides as follows:

> Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state.  And the Congress may by general laws prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof.

"The purpose of the Full Faith and Credit Clause is to prevent the litigation of issues in one state that have already been decided in another."  *LME v ARS*, 261 Mich App 273, 285; 680 NW2d 902 (2004) (quotation marks and citation omitted).

---

[2] When necessary, we refer to all corporate defendants collectively as "defendants."

Fundkite filed the Judgment with the trial court under the Uniform Enforcement of Foreign Judgments Act, MCL 691.1171, *et seq*. Section 3 of this act provides, in pertinent part, as follows:

> A judgment filed under this act has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of the circuit court, the district court, or a municipal court of this state and may be enforced or satisfied in like manner. [MCL 691.1173.]

"Nonetheless, of course, collateral attack may be made in the courts of this State by showing that the judgment sought to be enforced was void for want of jurisdiction in the court which issued it." *Delph v Smith*, 354 Mich 12, 16; 91 NW2d 854 (1958); see also *Blackburne & Brown Mtg Co v Ziomek*, 264 Mich App 615, 621; 692 NW2d 388 (2004) (explaining that "to be enforceable under the [Uniform Enforcement of Foreign Judgments Act], the foreign judgment must have been entered by a court with jurisdiction over the parties and the subject matter").

When examining whether a foreign state had jurisdiction over a defendant, this Court looks to the law of that state. See *Poindexter v Poindexter*, 234 Mich App 316, 319-324; 594 NW2d 76 (1999) (applying Mississippi law to determine whether a Mississippi court had jurisdiction over the defendant to enter a child support judgment against him). Generally, "a New York court may not exercise personal jurisdiction over a non-domiciliary unless two requirements are satisfied: the action is permissible under the long-arm statute ([NY CPLR 302]) and the exercise of jurisdiction comports with due process." *Williams v Beemiller, Inc*, 33 NY3d 523, 528; 106 NYS3d 237; 130 NE3d 833 (2019). Additionally, a defendant may consent to the jurisdiction of a New York court or waive the right to object to it. *Aybar v Aybar*, 169 App Div 3d 137, 142; 93 NYS3d 159 (2019).

Traditional agency-law concepts are also relevant to the parties' arguments. Under New York law, actual authority may be based on an express grant of authority to an agent or may be implied based on a principal's "manifestations which, though indirect, would support a reasonable inference of an intent to confer such authority." *Greene v Hellman*, 51 NY2d 197, 204; 433 NYS2d 75; 412 NE2d 1301 (1980). Implied actual authority may arise if the principal "performed verbal or other acts that gave" the purported agent "the reasonable impression" that he or she had authority to act on the principal's behalf. See *Site Five Housing Dev Fund Corp v Estate of Bullock*, 112 App Div 3d 479, 480; 977 NYS2d 209 (2013). However, even in the absence of actual authority, an agency relationship may be created by apparent authority, or ostensible agency. "Apparent authority may exist in the absence of authority in fact, and, if established, may bind one to a third party with whom the purported agent had contracted even if . . . the third party is unable to carry the burden of proving that the agent actually had authority." *Greene*, 51 NY2d at 204. In *Greene*, the New York Court of Appeals explained apparent authority this way:

> As with implied actual authority, apparent authority is dependent on verbal or other acts by a principal which reasonably give an appearance of authority to conduct the transaction, except that, in the case of implied actual authority, these must be brought home to the agent while, in the apparent authority situation, it is the third party who must be aware of them. Key to the creation of apparent authority is that the third person, accepting the appearance of authority as true, has relied upon it. [*Id*. (citations omitted).]

In other words,

> Essential to the creation of apparent authority are words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction. The agent cannot by his own acts imbue himself with apparent authority. Rather, the existence of "apparent authority" depends upon a factual showing that the third party relied upon the misrepresentation of the agent because of some misleading conduct on the part of the principal—not the agent. Moreover, a third party with whom the agent deals may rely on an appearance of authority only to the extent that such reliance is reasonable. [*Hallock v State*, 64 NY2d 224, 231; 485 NYS2d 510; 474 NE2d 1178 (1984) (quotation marks and citations omitted).][3]

In this case, irrespective of Fellows sale of his interest in 1150 and any actual authority to bind 1150 to agreements or transactions, Fellows did have apparent authority to bind 1150. Fellows averred that he was 1150's owner and principal and that he had authority to bind it. Fundkite relied on these representations. And its reliance was reasonable. See *Hallock*, 64 NY2d at 231. If and when Fundkite went to the LARA website, it would have found that Fellows was 1150's registered agent. According to 1150's articles of organization, which is publicly accessible, Fellows was its registered agent when it was incorporated. He was still the registered agent when he entered into the Judgment. Although the articles of organization state that 1150 is manager-managed, the document does not name 1150's manager(s). There was no other publicly available document that Fundkite could have, or should have, discovered that would have rendered its reliance unreasonable. 1150's failure to change its registered agent, innocent or otherwise, is "misleading conduct on behalf of the principal" that Fundkite reasonably relied on. Accordingly, 1150, through Fellows's apparent authority, consented to the jurisdiction of the New York court. Because the New York court had personal jurisdiction over 1150, the trial court did not abuse its discretion when it denied 1150's motion to set aside the judgment.[4]

Affirmed. Fundkite, as the prevailing party, may tax costs.

/s/ Jonathan Tukel
/s/ Kirsten Frank Kelly
/s/ Michael F. Gadola

---

[3] This Court has explained that, in Michigan, the elements of apparent authority, or ostensible agency, are as follows:

> (1) the person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one, (2) the belief must be generated by some act or neglect on the part of the principal sought to be charged, and (3) the person relying on the agent's authority must not be guilty of negligence. [*Chapa v St Mary's Hosp*, 192 Mich App 29, 33-34; 480 NW2d 590 (1991).]

[4] In light of our conclusion, there is no need for an evidentiary hearing on remand.